## Spade vs. The Hudson River Railroad Company.

Where goods were sent to a railroad depot and deposited on the stoop of the freight house, no one being there to receive them, and the cartman subsequently informed the freight agent that the owner of the goods *would call and order where they should go;* but there was no proof that any such direction was ever given by the owner; *Held* that the company were not in default, and could not be made liable, for not transporting the goods.

And the owner having subsequently taken away a portion of the goods, without any permission of the company, or the presence of any one in their behalf; *Held* that he was bound to show the value of the portion taken, before calling upon a jury or referee to decide what was retained, or that any part was retained.

Hearsay evidence is inadmissible, to show who was the freight agent of a railroad company, at a given time.

This was an appeal by the defendants from a judgment entered at a special term, upon the report of a referee. The action was brought to recover for certain carpenter's tools, of the alleged value of $135, contained in two chests, stated by the plaintiff to have been left by him in the defendants' freight house at Poughkeepsie, in the spring of 1852, and delivered to the defendants, to be kept and conveyed as freight, on their railroad, to some place on the line of said road, to be thereafter designated by the plaintiff, for a certain reasonable reward, and to be safely delivered to the plaintiff at that place. And the plaintiff averred that he directed the defendants to convey the goods to Yonkers; but that the defendants failed to convey the said tools to Yonkers, and through their carelessness and negligence the same were lost. The plaintiff further alleged that he had demanded the goods of the defendants, and they had refused to deliver them. The answer contained a general denial of the allegations in the complaint, and alleged that if any tools were left by the plaintiff at the defendants' depot or warehouse, they were left at the plaintiff's own risk, and without any order to freight the same, and were afterwards taken away by him. On the trial before the referee, the plaintiff proved by the cartman that he carried the boxes to the defendants' depot at Poughkeepsie and set them on the stoop of the freight house; no one being there

at the time ; that he again went down, on the afternoon of the same day, and the tools were on the stoop as he left them ; that he told the man to put them in the freight house, and the plaintiff would be down and order where they should go ; that the man put them in the freight house ; it was one of the men who receives and delivers freight ; that he informed Russell, the freight agent, the next morning, that Spade would be down and order where they were to go, who answered it was all right, that Spade had spoken to him about it. The plaintiff also proved that, about the middle of August, 1852, he served upon Mr. Morgan, who was *said to be* then the freight agent of the company, a paper demanding the tools. The defendants proved by Mr. Russell, the freight agent at the time the goods were left, that he never received any directions from the plaintiff to ship them to Yonkers. It was also proved that, on several occasions while the boxes remained in the freight house, Spade came there and carried away portions of the tools. The referee found that there was a full and perfect delivery of the tools to the defendants, as common carriers, and that the plaintiff, afterwards, with the knowledge and consent of a person in the employ of the defendants, took away a part of the articles, amounting in value to $30,62 ; and that a demand of the goods was duly made, of the company. He reported in favor of the plaintiff for $89,90.

*T. C. Campell,* for the plaintiff.

*. M. North,* for the defendants.

*By the Court,* S. B. STRONG, J. The plaintiff sets forth in his complaint that the goods in question were delivered to, and received by, the defendants, to be kept and conveyed as freight to some place on the line of the railroad, to be afterwards designated by him ; and that he directed the defendants to carry such goods to Yonkers. The plaintiff did not deliver the goods in person, but sent them to the depot by a cartman. The cartman testified that he saw no one at the depot, when he left the goods

there, but that on the afternoon of the same day he saw the goods in the stoop where he had left them, and then told a man whom he saw there to put them in the freight house and that " *the plaintiff would be down and order where they should go.*" And that he afterwards saw Mr. Russell, the freight agent, and told him that the plaintiff would be down and order where the goods were to go. The plaintiff had previously intimated a wish to Mr. Russell that they should be forwarded to Yonkers, but not in very decided terms ; and the subsequent direction communicated by the person to whom he intrusted the transportation of his property to the said road, was the only one which it would have been safe or proper for the company to follow. There is no proof that the plaintiff ever gave any subsequent direction to transport his goods to Yonkers, and therefore the defendants were not in default for not conveying them to that place.

The goods were simply deposited with the defendants. The plaintiff was of course entitled to them on paying or tendering to the company a reasonable compensation, and making a demand of the proper officer. He did obtain a portion of them, but to what extent does not appear. As he took them without any permission of the company, or the presence of any one in their behalf, he is bound to show what they were, before calling upon a jury or referee to decide what was retained, or that any were retained. When he took what he had abstracted from the chests, to the cartman, he said he had a *few more* which he would like to have the cartman bring up, but there is no evidence that any were in possession of the defendants when he made his final demand. The proof as to the quantity or value of the goods taken away, was very defective.

The complaint does not set forth any distinct claim for the non-delivery of the property to the plaintiff. The demand and refusal stated have reference to the failure of the defendants to comply with their obligation as common carriers, and the consequent injury. If the plaintiff relied at all upon a demand and refusal of the goods, there was none proved, as it was not shown that the person upon whom a demand was made, was the proper

agent of the defendants, or indeed an agent at all, except by hearsay evidence, which was objected to and was not competent.

The judgment at special term should be reversed, and the report of the referee set aside, costs to abide the event.

[Kings General Term, October 3, 1853.  *Barculo, Brown* and *S. B. Strong,* Justices.]